IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAYE BEAR, individually and as parent of C.J., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-cv-1278 |
| WELLPATH, LLC, f/k/a/ CORRECT CARE SOLUTIONS, LLC; and CORRECT CARE SOLUTIONS, LLC; | § § § § § | |
| *Defendant*. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Shaye Bear ("Plaintiff" or "Bear"), individually and as parent of C.J., files this, her Original Complaint, against Wellpath, LLC, f/k/a Correct Care Solutions, LLC, and Correct Care Solutions, LLC ("Defendant" or "CCS")[1] for unlawful medical neglect resulting in the death of her newborn baby, C.J., and would respectfully show the Court the following:

## I.
## PARTIES

1. Plaintiff Shaye Bear is a resident of the State of Texas.

2. Defendant Wellpath, LLC, f/k/a Correct Care Solutions, LLC is a Delaware corporation with its headquarters and principal place of business located in Tennessee. This Court may exercise personal jurisdiction over Wellpath because its employees at the Ellis County Jail committed acts

and omissions within the scope of their employment that gave rise to this cause of action. Wellpath may be served with process through their registered agent Corporate Creations Network, Inc., 2425 W. Loop South #200, Houston, TX 77027.

3.     Defendant CCS is a Kansas corporation with its headquarters and principal place of business located in Tennessee. This Court may exercise personal jurisdiction over CCS because its employees at the Ellis County Jail committed acts and omissions within the scope of their employment that gave rise to this cause of action. CCS may be served with process through their registered agent Corporate Creations Network, Inc., 2425 W. Loop South #200, Houston, TX 77027.

## II.
## JURISDICTION AND VENUE

4.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, since all parties are citizens of different States and the amount in controversy exceeds $75,000.

5.     Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events giving rise to the cause of action occurred in the Northern District.

## III.
## FACTUAL ALLEGATIONS

6.     On March 10, 2018, Plaintiff was arrested and detained at Ellis County Jail.

7.     Ellis County has a duty to provide detainees and inmates with necessary medical care, including prenatal care and labor and delivery care.

8.     During the time period at issue, Ellis County contracted with CCS to provide all of the medical care at its jail. All of the medical staff at the Ellis County Jail, including Dr. Damian Garcia, were employees of CCS.

---

[1] It appears that CCS, which was contracted to provide medical care at the Ellis County Jail, has since rebranded as "Wellpath." Both are named here, in an abundance of caution, but will be referred to as a singular Defendant or simply "CCS."

9. Just prior to being arrested on March 10, Plaintiff had discovered that she was approximately three months pregnant.

10. This was confirmed shortly after her intake into custody by an evaluation performed at the Hope Clinic.

11. On or about May 15, 2018, Plaintiff began experiencing cramping, bleeding, and pain related to her pregnancy.

12. She alerted the jail's medical staff to her condition and proceeded to see a nurse who simply sent her back to her cell.

13. The jail then moved Plaintiff into a single cell; i.e., Plaintiff was alone without any cellmates.

14. For approximately the next two days, Plaintiff screamed in pain and was heard by fellow inmates, guards, medical staff, and the jail counselor.

15. During that time, guards repeatedly walked by Plaintiff's cell but ignored her pleas for help and cries that she was in labor. Nursing staff failed to recognize an imminent medical emergency, despite Plaintiff's constant screaming in pain. Both the nursing staff and the guards instead thought Plaintiff was just faking the pain. Throughout the two-day period, Plaintiff asked to go to the hospital multiple times but was denied.

16. At one point, a guard asked inmate Brittany Dodson to talk to Plaintiff and tell her to "shut up and breathe."

17. In the early morning of May 17, Plaintiff complained that she was suffering from labor contractions that were 5-6 minutes apart.

18. Plaintiff was examined that morning by Dr. Damian Garcia, who is a generalist physician and not an obstetrician or pre-natal specialist.

19. Dr. Garcia told Plaintiff she was suffering from an infection but that she was not going into labor and that her cervix was not dilated.

20. Plaintiff was returned to her single cell and continued to scream in pain throughout the day.

21. Later that day, between approximately 1:30 and 3:30 p.m., Plaintiff was in court for a hearing in which she was asking to be released on personal recognizance or have her bond lowered.

22. Plaintiff informed Judge Cindy Ermatinger more than once that she had been having contractions since the previous night, had suffered bleeding, and was currently in pain.

23. Plaintiff also asked to go to the hospital while in the courtroom.

24. Judge Ermatinger opted to finish the hearing but told Plaintiff she could be seen by a doctor afterwards.

25. Plaintiff was in fact not seen by a doctor afterwards; instead, she was taken back to her single cell.

26. Plaintiff continued to suffer painful contractions throughout the rest of the day, approximately every 5-6 minutes.

27. Plaintiff repeatedly cried out in pain and pleaded for help but was roundly ignored by jail staff, including medical staff.

28. At approximately 6:30 p.m. that day, May 17, Plaintiff gave birth—alone in her cell—to an extremely premature baby, C.J.

29. Plaintiff had to request help multiple times, holding up her one-pound baby for guards to see, before anyone showed up to assist. It took at least several minutes for staff to respond after C.J. was born.

30. Baby C.J. was taken to intensive care at Cook Children's Medical Center but died nine days later, on May 26, 2018.

31. Baby C.J.'s extremely premature birth and subsequent death could have been averted if Dr. Garcia had not grossly mis-diagnosed Plaintiff on the morning of May 17.

32. A proper diagnosis would have been followed by Plaintiff going to the hospital for proper care, rather than enduring the stress of a court appearance and subsequent isolation in a cell, where her cries for help were flatly ignored.

33. Other medical staff also failed the standard of care when they misdiagnosed Plaintiff's imminent premature birth and ignored her persistent screams of pain, believing instead that she was just "faking it."

34. Furthermore, the policies and procedures put in place by CCS at the Ellis County Jail were insufficient to provide prenatal care to pregnant inmates that met the standard of care. In fact, they were virtually non-existent, consisting of little more than "Pregnant inmates will be referred to a doctor. Prenatal care and checkups will be conducted as directed by the doctor." This must be viewed in the context of CCS's awareness that the non-medical staff at the jail had no training or ability whatsoever to recognize and respond to emergencies, and no training in how to care for pregnant inmates. Nonetheless, CCS relied on non-medical staff to bring emergencies to the attention of medical staff.

## IV.
## CAUSE OF ACTION: NEGLIGENCE

35. All preceding paragraphs are incorporated herein by reference.

36. Prior to filing this lawsuit, Plaintiff complied with the provisions of Chapter 74 of the Texas Civil Practice and Remedies Code by providing notice to Defendant of a health care liability claim and medical record release authorization.

37. Defendant CCS, as the contracted medical provider for Ellis County Jail, had a duty to provide competent medical care to Plaintiff while she was detained at the jail.

38. CCS breached this duty through the actions and/or omissions of its employees. This includes Dr. Garcia, who grossly misdiagnosed Plaintiff's pregnancy complications, and various nurses, who ignored Plaintiff's pleas for help and/or failed to recognize a medical emergency for the two days leading up to C.J.'s premature birth.

39. CCS further breached this duty through its own deficient policies, including supervision and training of its employees.

40. The actions and/or inactions of CCS and its employees were the cause-in-fact of Plaintiff's premature delivery of C.J. and his subsequent death.

41. C.J.'s premature birth and subsequent death were foreseeable consequences of failing to recognize Plaintiff's pregnancy complications and sending her back to her single cell instead sending her to the hospital or taking any other precautionary measures whatsoever.

42. Further, such a premature birth is the foreseeable result of having deficient policies and procedures in place that fall below the standard of care in providing prenatal care to pregnant inmates.

43. As a result of CCS's negligence, Plaintiff has suffered serious and substantial harm for which she requests the award of the following categories of damages:

   a. In her individual capacity, physical and mental pain and suffering in the past and the future;

   b. The loss of her child;

   c. Reasonable medical expenses in the past and in the future; and, as parent of C.J.,

   d. The physical and mental pain that C.J. suffered in the nine days that he lived, after being born prematurely on a jail cell floor.

## V.
## DAMAGES

44. As a direct and proximate result of the acts and omissions outlined above, Plaintiff has been severely harmed. The Defendants' conduct caused the premature birth and subsequent death of her child, C.J. She has also suffered physical, emotional and mental anguish caused by such actions.

45. Plaintiff seeks compensatory damages in an amount deemed sufficient by the trier of fact to compensate her for her damages, which include, in the past and future: the death of her child, physical pain, mental anguish, and medical expenses. Plaintiff also seeks exemplary damages.

46. Plaintiff also seeks damages in her capacity as the parent of C.J., who suffered physical and mental pain due to the negligence of Defendant and compensable under the Texas Survival Statute, Texas Civil Practice and Remedies Code § 71.021.

## VI.
## JURY DEMAND

47. Plaintiff demands a trial by jury.

## VIII.
## PRAYER

FOR THE REASONS STATED ABOVE, Plaintiff Shaye Bear requests that Defendant CCS be summoned to appear and answer herein and that upon final trial or hearing, a judgment be entered in favor of the Plaintiff and against Defendant as follows:

  a. Awarding Plaintiff actual damages in an amount that is within the jurisdiction al limits of this Court;

  b. Awarding Plaintiff punitive or exemplary damages in an amount that is within the jurisdictional limits of this Court;

  c. Awarding Plaintiff pre-judgment interest at the highest rate permitted by law;

  d. Awarding Plaintiff post-judgment interest at the highest rate permitted by law; and

e.  Awarding Plaintiff all such other and further relief, at law or in equity, to which she may show herself to be entitled.

Respectfully submitted,

By: /s/ *Don Tittle*
Don Tittle
State Bar No. 20080200
don@dontittlelaw.com
Roger Topham
State Bar No. 24100557
roger@dontittlelaw.com
LAW OFFICES OF DON TITTLE
6301 Gaston Avenue, Suite 440
Dallas, Texas  75214
(214) 522-8400
(214) 389-1002 (fax)
*Attorneys for Plaintiff*